THE STATE OF TEXAS v. SAMUEL M. WILLIAMS AND OTHERS.
SAME v. ROBERT MILLS AND OTHERS.

See this case for a discussion of the certainty requisite in indictments and in petitions in actions for penalties.

The practice of delivering to the defendant a bill of particulars, is not known in our Courts.

Where the statute imposed a penalty on the use or exercise of banking or discounting privileges, and also on the issue of each bill, check, promissory note, or other paper, to circulate as money, and prescribed that each month that any one should use or exercise banking or discounting privileges, should be a distinct offence, and each bill, &c., also a distinct offence, and prescribed one penalty for the use or exercise of banking or discounting privileges, and a different penalty for the issue of bills, &c., it was held that the petition in an action for using or exercising banking or discounting privileges, must specify the particular facts intended to be proved as constituting the offence, and that it was not sufficient to allege that the defendant "without authority of law, did use and exercise "banking privileges, in this State, on and from the said first day of April, A. "D. 1852, for and during the term of one month, fully completed and ended, "contrary," &c.

Where a statute creates an offence, composed of different constituents, and the same statute makes each of those constituents a distinct offence, it is necessary in a prosecution or action for the offence first mentioned, that the particular constituent or constituents relied on should be specified with accuracy in the indictment, information or petition, as the case may be.

*Quere?* Whether the opinon of the majority of the Court, is to be understood as maintaining that a conviction of the offence of using or exercising banking or discounting privileges, by alleging and proving the issue of certain bills, &c., and the discounting of certain notes, would be a bar to separate actions for the penalty for issuing the particular bills, &c.

Appeal from Galveston.  The petition alleges that after the passage of an Act of the Legislature of the said State of Texas, entitled "An Act to suppress illegal banking," approved March 20th, 1848, to wit: on the first day of April, A. D., 1852, in the county of Galveston, in said State, said defendants and the persons aforesaid unknown were, then and there, and previously thereto, had been associated together, being, the said Samuel M. Williams, President and a Director, the said

Henry Jenkins, Cashier, and the other defendants, the other Directors of the said illegal bank, called "the Commercial and Agricultural Bank," and the persons aforesaid unknown, the said illegal bank, then and there, having and keeping, and previously thereto, having had and kept an office in the city of Galveston, in the said county of Galveston, and in said State ; and, that, on the said first day of April, A. D. 1852, and from thence continually, afterwards, for the space of one month, until the final end and termination of the said month of April and until, and up to the first day of May, in the year last aforesaid, the said defendants, and the persons aforesaid unknown, in the character of President, Directors and Cashier, as aforesaid, did, then and there, without authority of law, at the said office of the said illegal bank, so kept in the said city of Galveston, in the county of Galveston aforesaid, use and exercise banking and discounting privileges, in this State, for their own lucre and gain ; contrary to the form of the statute in such case made and provided, in violation and contempt of the constitution and laws of the said State of Texas, and against the peace and dignity of the same ; whereby, and by force of the said statute in such case made and provided, the said defendants were, then and there, guilty of a misdemeanor, and forfeited and became liable to pay to your petitioner, a fine of five thousand dollars, and a right of action hath accrued to your petitioner for the recovery of the same from the defendants, and therefore she brings this her suit.

Then followed six other counts, each for a different month, the whole amount claimed being thirty-five thousand dollars. General demurrer to the petition. Demurrer sustained. Attorney for the State declining to amend, suit dismissed.

There was another suit against Samuel M. Williams, and a different set of directors for four other months, claiming twenty thousand dollars ; disposed of the same way.

In the State v. Robert Mills and others the petition allegea that, after the passage of the Act of the Legislature of the State of Texas, entitled " An Act to suppress illegal banking,"

approved March 20th, 1848, and heretofore, to wit: on the first day of April, A. D. 1852, in the County of Galveston aforesaid, the said defendants, then and there, associated together, and constituting a company, under the name, firm and style of R. & D. G. Mills, as aforesaid; and having and keeping an office in the city of Galveston aforesaid, did, then and there, to wit: on the day and year last aforesaid, in the county of Galveston aforesaid, without authority of law, use and exercise banking and discounting privileges, in this State, on and from the said first day of April, A. D. 1852, for and during the term of one month, fully completed and ended, contrary to the form of the statute in such case made and provided, in violation and contempt of the Constitution and laws of the said State of Texas, and against the peace and dignity of the same; whereby, and by force of the said statute in such case made and provided, the said defendants were, then and there, guilty of a misdemeanor, and forfeited and became liable to pay to your petitioner, a fine of five thousand dollars, and a right of action hath accrued to your petitioner for the recovery of the same from the defendants, and therefore she brings this her suit.

Then followed ten other counts, each for a different month, the whole amount claimed being fifty-five thousand dollars. The defendants filed a special demurrer, and among other causes relied on the uncertainty of the petition. Demurrer sustained; attorney for the State declining to amend, suit dismissed.

*Attorney General*, for appellant. It is admitted that "the same certainty in the specification of the fact or facts constituting the offence defined will be required," in the petition, upon a statutory charge like the present, as upon an indictment; and with this admission constantly before our eyes, we will proceed to consider whether or not this petition describes the offence of which it complains, with sufficient certainty. (State v. Williams, 8 Tex. R. 265.)

It is also admitted that "the established rules of (criminal) "pleading require the essential facts and circumstances to be "particularly, unambiguously and certainly stated, that the Court "may know whether they amount to a violation of the law, and "what punishment, if any, they require. A general charge, as "that a man is a common thief, common forestaller, or common "champertor, &c., is clearly insufficient." (Com. v. Pray, 13 Pick. 362 ; Hawk. bk. 2, c. 25. Sec. 59.)

"But (proceeds the learned Judge who delivered the opinion "of the Supreme Court of Mass. just cited) this general rule, "useful and important as it may be, is not without its excep- "tions ; for there are classes of cases to which it does not apply. "Wherever the crime consists of a series of acts, they need not "be specially described, for it is not each or all of the acts "themselves, but the practice or habit which produces the prin- "cipal evil and constitute the crime."

It is not necessary to cite authority in support of the rule, the correctness of which I have admitted, for it is the very principle which will be invoked and relied on against me ; but if I were so disposed, this course would serve my purpose as well as any other, for wherever (in an elementary work) we find the rule, we are sure also to find the exception. Indeed they furnish a striking illustration of the maxim " *exceptio pro- bat regulam ;*" for in this instance the rule does not, and could not exist without the exception. Mr. Starkie (Criminal Plead- ing, cap. 5, p. 75,) after stating the rule, thus announces the ex- ception : " The only instances in which general pleading seems " to be allowable, are exceptions from the necessity of the case, " where the offence is made up of a number of minute acts, " which cannot be enumerated upon the record without great " prolixity and the danger of variance." Grose J. in Rex v. Mason, says, " The keeping of a gaming house may be des- cribed generally, because it consists of a multiplicity of facts." (1 Leach, C. C. 548.) And these authorities cite Hawk. Ib. ; 6 Mod. 311 ; Strange 1246 ; 2 Burr. 1233. We may add Whart. A. Crim. Law 119, with its numerous authoritative re-

ferences, and trust they will plead our pardon for asserting that this exception is as clearly established and as firmly fixed as the rule.

We might here close this branch of our argument by simply asking the Court to consider the rule and the exception, and feel no hesitation in concluding which it would consider applicable to the pleading in our petition ; but the circumstances in which the great interests of the State here involved are placed, admonish us to the use of greater diligence on this occasion, and we hope to fail neither in the necessary firmness nor industry.

I proceed to inquire, then, whether our pleading comes under the rule or the exception, and having shown, by authoritative definitions of one and the other, that, from the very nature of the facts to be charged constituting a series of minute acts running continuously in a stream through the period of an entire month, the case presents an instance for the application of the exception, I will endeavor to demonstrate the same proposition by illustrations from the reported cases.

With this view I beg attention again to the case cited from Pickering. The statutory offence, there proceeded against, was charged in the words of the statute : " did presume to be, and " was a common seller of wine, beer, ale, cider, &c., and other " strong liquors by retail, in less quantities than twenty-eight " gallons, and that carried away all at one time." Here the precise question, now before us, was ably made and more ably overruled, and the indictment sustained, upon consideration of the exception I have invoked. The Court, in its opinion, cite numerous instances of the application of the exception, as that it is admissible to charge a person, in general terms, with being " a common barretor," or a " common scold," " with keeping a house of ill fame," or a " disorderly house," or a " common gaming house ;" and after citing indisputable authority for each of these instances of the proper application of the exception, Judge Morton says : " Now, although all the acts which make up " these general offences are in themselves unlawful, it is not ne-

" cessary to set them forth. The several acts may be indicted
" and punished separately, but the keeping of the House (the
" practice) is a distinct offence, and as such liable to punish-
" ment."

The case of Bush v. The Republic (1 Tex. R. 455,) which ad-
mirably illustrates the rule, as clearly admits the exception.
The offence intended was " keeping a tippling house for retail-
ing, and retailing spirituous liquors," &c. This Court fully
admit the proper application of the exception to the first branch
of this offence, " keeping a tippling house," &c., for it is thus
generally charged, in the words of the statute, in the indict-
ment, which is not objected to in the opinion, while the general
charge of the second branch of the offence, selling liquor, is
properly condemned as contravening the rule. And why is
this ? Because the first branch of the offence, consisting of
" a series of minute particulars," (keeping a tippling house,)
comes under the exception, and the second branch, selling
liquor, comes under the rule, as any one act of selling would
constitute it. And so Burch v. the Republic (1 Tex. R. 608)
is alike consistent with the rule and with the exception.

Without unnecessarily protracting this discussion, I will
close the consideration of the distinction between the rule and
the exception by stating the conclusion which I conceive my
premises fully establish, that the former applies where a spe-
cific act, or specific acts, constitute the offence ; for there the
act or acts must, because they can, be specially stated in plead-
ing, but the latter (the exception) alone applies where the of-
fence consists of " a series of minute acts or particulars," consti-
tuting together a practice or habit of conduct or business ; for
there the acts or particulars need not, because they cannot, be
stated in pleading, without " danger of variance," &c.

Now, if being a " common barrator" or a " common scold,"
" keeping a tippling house," " keeping a bawdy house," or " a
disorderly House," " or a common gaming house" come under
the exception, because these practices consist of a series of acts
or minute particulars, how emphatically is this true as applica-

ble to a charge of the "use and exercise of banking or discount‌ing privileges for the space of one month!" Of what does this offence consist, but a series of acts, constituting a practice or habit of business? If it consist of any specific act or acts, what act or acts are they? how many? To make the month's offence how many must the pleader charge? One for each day? And if this be claimed, why? If, in the cited instances, such as keeping gaming houses, the pleader is not compelled to. state particular acts, which are not required to be shown to have been carried on any certain length of time to constitute the offence, and the doings of which are not in writing, how much more forcibly does "the danger of variance" (see cita‌tion from Starkie) and all the reasons for allowing "general pleading" in the cited instances, apply to this case, where the acts‌ must be shown to have "run on" for an entire month, and where the prohibited acts are carried on almost entirely in writing in regard to which, if required to be specifically set out, there would not be "a danger, but a certainty of variance," inevitably fatal to the action. For it must be remembered that the Attorney General has no right or power, before drawing the petitions, to apply to the parties he intends to sue, for an exhibition of‌ their books, &c.; and even if this were accorded to him, I would like to study law a few years under the man who could decently describe in a petition, drawn under this statute, the· acts of illegal banking of a large banking house for the period of one month.

I have reserved for the closing part of my discussion of this point two authorities, both precisely in point, and of the higest character. The first is a precedent, (see 2 Chit. Crim. Law, 539–40,) of an indictment for an offence under a statutory pro‌vision, as to its structure and modes of expression, just like the· one we are considering, and this authoritative pleader not only contents himself with simply pursuing the words of the statute, but shows in his notes that there can be no controversy as to the propriety of this course. The statute in question forbids "any person to set up, use or exercise" any craft, mystery or·

occupation, except he should have been brought up therein seven years," &c. The last authority I shall cite on this question is the case of the People v. Bartow, 6 Cowen R. 290, the citation of which would, under ordinary circumstances, have been deemed sufficient in support of my petition. This was a penal action upon a statute which prohibited the "keeping of "any office of deposit for the purpose of discounting promissory "notes, or for carrying on any kind of banking business or op- "erations, unless thereunto specially authorized by law." The declaration followed the words of the Statute, in describing the offence; that is, it was not a whit more specific than the Statute, and was fully sustained by the Court. Mr. J. Woodworth, in concluding the opinion of the Court, says, (of the allegations of the declaration,) "The Statute does not require a specification. The allegation, although general, is not more so than the Statute." After our review of the authorities and principles here alluded to, we can well understand this brief, but correct mode of disposing of this point. The same learned Judge correctly holds that, "When it is considered that this Statute (to "suppress illegal banking) was intended to strike at an existing "evil, deemed to be of serious injury to the community, it can- "not well be doubted that its enactment was to promote the "public good." And, therefore it belongs to that class of Statutes, which, though penal, ought to receive a construction in advancement of the remedy. (For a collection of the authorities in support of this proposition see my brief in the case of the State v. Swisher, now before the Court.)

Having, before preparing the petition in this case, given my best attention to the opinion of this Hon. Court in the case of The State v. Williams et al, 8 Tex. R. 255, having come deliberately to the conclusion that I must either abandon all hope of executing the law, in the respect here involved, or must depart so far as I have departed, from the directions of that opinion, and having obtained the permission of the members of the Court, and especially of the honorable and distinguished Judge who delivered that opinion, to again present the question of the

mode of pleading under this Statute, discussed in it, I trust, in availing myself of that permission, I have conducted myself with becoming respect for the members of that august tribunal which has the power to decide, and must decide, upon this question of pleading, whether or not this great *pro bono publico* Statute shall be executed, in the particular here sued for. It is the duty of the Court so to direct the proceedings that the law shall be carried into effect; and the moment a Court prescribes rules of practice under a Statute, admitted to be valid, which must defeat its operation, that moment it usurps arbitrary power : a power that might equally well be applied to defeat the operation of any or every law. I mean simply to say that any mode of proceeding under a valid law, which is fatal to the operation of the law, is to be rejected by the Courts for that very reason ; and, that the mode of framing a petition upon the Statute before us, insisted on by the appellees, would render it wholly inoperative, in regard to the offence here involved, is too clear to require illustration. Having discharged my duty, to the best of my judgment and ability, both in framing the petition in this case, and in the endeavor to support it here and elsewhere, and thus used the only means known to me for the enforcement of an important and salutary public Statute, I feel that the responsibility of its execution no longer rests with me.

*Allen & Hale*, for Williams and others. The Statute enacts an offence in derogation of the Common Law, by declaring those guilty of a misdemeanor, " who shall use or exercise banking or discounting privileges." (Hart. Dig. Art. 87.)

The definition of the " offence" is expressed in terms more vague and general than those usually adopted to define crimes and misdemeanors in other cases. (See the definitions of treason, murder, robbery, arson, larceny, etc., in the "Act punishing crimes," Hart Dig. p. 178, 179, *et seq.*)

These definitions are all mere " conclusions of law," deduced from certain facts, supposed to be known to the pleader, which

must concur in order to constitute the offence. Hence in an indictment or information, the offence is not described by its Statute definition, but by setting forth facts which constitute it. Or in the language of Chitty " the charge must contain a " statement of the facts by which the crime is constituted ; a " certain narrative of the offence and of those necessary cir- " cumstances, that concur to ascertain the fact and its nature." (1 Chitty, Crim. Law, 169.) " The special manner of the whole " fact ought to be set forth with such certainty, and so specifi- " cally, that it may judicially appear to the Court, that the in- " dictors have gone upon sufficient premises, * * * * and that " posterity may know what law is to be derived from the re- " cord." (Id. 227, 228.) General charges are not sufficient. (Ib. and notes, with the authorities there cited.)

This is declared to be a general rule, and the principal (if not only) exceptions are cases of a common barator, common scold, keeper of a common bawdy house, and (probably) of a common gaming house, (perhaps also) of a common tippling house, who are allowed to be charged generally, because the name is supposed to indicate an occupation or calling necessarily descriptive of the facts which constitute their crime. But to the cummon barator, and others so charged, notice of the particular instances intended to be proved, must be given before trial. (Starkie's Crim. Pl. 76, note 9.)

But there is yet another reason for the general rule, above cited, which Mr. Spencer, C. J., considers, so deeply engrafted in our Criminal Law, " and so essential to the enjoyment and protection of personal liberty in a free country," so agreeable to common sense and common "justice," and so founded upon "abundant authority," that "it may safely be assumed as universal," viz : the " general principle that every man is entitled to a specification of the charge against him." And he insists that the above isolated cases, as to " general charges" are not in derogation of the general rule ; apparent exceptions" merely. (Lambert v. The People, 9 Cowen, 586 *et seq* ; 1 Ch. Crim. L.

228, 229, 230 ; State v. Raiford, 7 Port. 101 ; State v. Fields, 1 Martin & Yerger, 141, 142.)

No Statute whatever was ever passed by the Legislature of Texas, with the intention of allowing in any instance, a departure from this rule. All the rules which apply to indictments at Common Law, apply also to those founded upon Statutes. The same precision, the same certainty and more strictness are required in the latter than in the former. (1 Ch. Crim. Law, 275, and note of cases in 4 and 7 Porter.)

It is said to be a general rule, that in indictments for misdemeanors, created by Statute, it is sufficient to charge the offence with the words of the Statute. (Id. 276, note.) But this rule cannot contravene the former. Chitty says the description of the offence given by the Statute is often insufficient. (Id. 275, *et seq.*) Morton, J., lays down the general rule to be the direct contrary to that expressed in the note last cited. He says, "the indictment describes the offence in the very words of the Statute. This is usually not sufficient." (Commonwealth v. Pray, 13 Pick. 362.)

It will be noticed that Judge Morton in this case, reiterates the general rule, cited from Chitty, and so carefully regarded by Judge Spencer, as applicable to all indictments, including those framed on Statutes, as well as others. And let it be observed that this was a misdemeanor created by Statute. "But," he says, " this general rule, useful and valuable as it may be, is not without its exceptions." And he instances the class of cases, noticed by Judge Spencer, as " apparent exceptions," including that of a common retailer of liquors, and an indictment against a town, for not keeping in repair a highway. (Same case, 362.)

It matters not, however, whether these cases be called exceptions" or " apparent exceptions." They do not intend to contravene the general rule, and the Judges Morton and Spencer differ in mere terms and not in substance. " Whenever," says " the former, " the crime consists in a series of acts, they need " not be specially described ; for it is not each nor all the acts

" themselves, but the practice or habit that constitutes the
" crime." Hence the very name or term, common retailer,
common scold, etc. imports " a statement of the facts, which
" constitute the offence. A certain narrative of the offence and
" those necessary circumstances which concur to ascertain the
" fact and its nature. If such terms constitute a compliance
" with the general rule, not a deviation from or exception to it,
" then they fully apprise the defendant of the nature of the
" charge against him." (Morton, J., in case last cited, p. 363.)

Could the phrase common murderer, by universal accepta-
tion, convey a definite and certain description of a crime "with
the special manner of the whole fact," then its use in an indict-
ment would be a full and strict compliance with the general
rule mentioned. But such is not the case. Attempts to extend
the class of so called exceptions often occur, in the books but
none have received the judicial sanction.

John Brown was charged with being a " common Sabbath
breaker, and profaner of the Lord's day ;" Henry Walker with
being a " common gross and notorious drunkard." The indict-
ments were held insufficient, because in derogation of the gen-
eral rule. (3 Murphy, 224 ; Id. 229.) Nelson Fields was in-
dicted (being a constable) for "oppressively suing out an execu-
tion." Judge Crabb says, " Is it not a rule, than which none
" is better established, that an indictment must contain a certain
" description of the offence and a statement of the facts by which
"it is constituted?" and " can it be seriously contended, that
the use of an epithet (oppressively) will supply the want of an
averment of facts?,' (State of Tennessee v. Nelson Fields, 1
Mart. & Yerg. 141.)

When by Statute a new offence is added to the list of those
before known to the law the Legislature defines or describes it
in language more or less explicit, depending upon the care and
skill employed in drafting the Act. If the description thus
given conform to the general rule cited ; if it embrace all the
facts and circumstances which constitute the ingredients of the
offence, then no doubt it will be sufficient for the indictment to

follow the Statute. Otherwise, not. This rule is not deducible from all the authorities, and is, I believe, without exception. By this criterion then, the Statute and information in the present case must be tried. (Duck v. Ch. Burgess, 7 Watts, 181; Commonwealth v. Stout, 7 B. Monroe, 247, 249.)

To constitute the misdemeanor, some corporation, company or association of individuals must use or exercise what the Statute calls " banking or discounting privileges," for the space of one month without authority of law. To do this one, two or three weeks is no offence.

Does this description convey a precise, certain, clear and unmistakable meaning ? If not, then it is insufficient for an information, and the pleader must render it certain by apt averments ; otherwise, it is no notice to the defendants of the charge preferred against them. That it is uncertain and obscure appears from analysis.

First. Are the words " banking" and " discounting" synonymous, convertable ? In their odinary acceptation they are not. The former is of far more extensive and copious signification than the latter ; and if the Statute use it in a restricted or limited sense, it should so appear by averment in the information, for nothing material can be taken by implication or intendment. Else the accused knows not how to prepare for his defence. He knows not the nature or extent of the proof he is to meet on his trial. (1 Chitty Pl. 237 ; Hawk. b. 2, c. 25, s, 60, also 111.)

Secondly. If the words are not synonymous, then what are " banking privileges ?" Are they the same as banking operations ? If so, they embrace every kind, species and variety of banking that can be carried on or used. In the case of Bartow v. The People, (6 Cowen, 290,) only such kinds of " banking business or operations" are contemplated as " incorporated banks are authorized to carry on." Our Statute has no such limitation, and consequently embraces faro and other banking games, or operations in this line of banking.

That this is not an unmeaning or useless refinement will

abundantly appear from authority. The defendants are entitled to avail themselves of the presumption afforded by this construction of the Statute, upon which the information in this case is based ; and so it will appear by analogies drawn from hundreds of cases. (See the opinion of Taylor, Ch. J. in The State v. Jim a slave, 3 Murphy, 5, also in the case of The State v. Cheny a slave, same book, p. 8 ; also the latter portion of the opinion of Judge Henderson, in the State v. John Brown, same book, p. 225 and 226.) The construction suggested is aided by the very title of the Statute, viz : "An Act to suppress illegal banking ; and the description of the offence in the first section necessarily embraces, yes, emphatically, all those banking operations conducted by gaming, which are made illegal by express enactments. That is to say, it embraces them, if "banking privileges" mean banking operations.

If the information is designed to charge upon the defendants the exercise of such privileges, it should "identify the accusation ;" if the exercise of other banking privileges, it should do the same, and in either event it should show "the means" by which the same were exercised. (Lambert v. The People, 6 Cowen, 587, 588.) For it would be too absurd, too extravagant to argue that under the notice conveyed by the information in its present form, the defendants are bound to construe the Statute at their own peril, or to come prepared to resist the charge under any phase, selected by the prosecutor at the trial, from the endless catalogue of distinct operations contained in the spheres of promiscuous and universal banking. We know not, we cannot know, with what specific or distinct offence we are charged in this prosecution. (The People v. Allen, 5 Denio, 76 ; Howell v. Commonwealth, 5 Grattan, 664 ; The State v. Thomas, 3 Strobhart, 269 ; Anthony v. The State, 13 Sm. & Mar. 263 ; The State v. Raiford, 7 Port. 101 ; Hurl v. Commonwealth, 5 Barr, 60 ; Commonwealth v. Stout, 7 B. Monroe, 247 ; Bardell v. Herrit, 3 Caines, 137 ; Duck v. Chief Burgess, 7 Watts, 181 ; The State v. Wrinberly, 3 McCord, 190 ; The State v. Absence, 4 Port. 397.)

Thirdly. But what is a "privilege?" It is a personal right, a private law, a personal franchise. The very term imports something which every citizen, every member of the community has an indefeasible right to use or exercise.

It will be in vain to reply " *ex cathedra* " or *dehors* the record, that the word "privileges" is not to be taken in its ordinary or popular signification ; that by the phraseology of the charge, banking operations are intended, and not such privileges as the defendants might lawfully use. Does it so appear on the face of the information? If not, the very reply shows the demurrer well taken.

How idle the attempt to wrest the authority of the few cases found in the books, where the great principle and rule before cited seem to have been full loosely applied, in order to uphold this information against the force of our demurrer ! Those cases stand alone. The Courts feel that they have gone far enough, even to a doubtful extremity, in sustaining them. The reasons and grounds of their sanction rest upon the apparent necessities which characterize each separate case. As precedents they are unsafe, but as analogies they would lead to the grossest injustice, tyranny and oppression. Indictments and informations would soon degenerate into vague and extravagant accusations. An acquital would be no protection, and a conviction no satisfaction. The rule requiring the prosecution to furnish the accused with a bill of particulars or a specification of the charge before trial in cases of a common barator, a common scold and the like, most clearly shows that the Courts feel that in allowing indictments of this kind, they have to some extent infringed the great fundamental principle cited ; and to remedy the evil they have been compelled to resort to an innovation, viz : that of extending the requisite notice, by means of a separate specification, instead of the indictment or information itself. To such expedients have the departure from safe practice already led. And if these departures are to be regarded as precedents, bristling with a thousand radiating analogies, the consequences will indeed be deplorable. (Star-

kie's Crim. Pl. 75, 76, and note q to last page, with citation there.)

We are referred to the case of The People v. Bartow, (5 Cowen, 290,) to sustain this information. It was an action of debt in two counts, founded upon the Statute recited in the first count, which enacted that it should not be lawful for any person, association or body corporate, from and after the 1st day of August then next, "to keep any office of deposit for the "purpose of discounting promissory notes, or for carrying on "any kind of banking business or operations, which incorpo- "rated banks are authorized by law to carry on, unless there- "unto specially authorized by law." The count then charged that the defendant on, &c., at, &c., "did keep an office of de- "posit for the purpose of discounting promissory notes, he not "being thereunto specially authorized."

The second count charged that the defendant "did keep an "office of deposit for the purpose of carrying on banking busi- "ness, etc., which incorporated banks are authorized," etc.

Now it would be impossible to find language more explicit, pertinent, and certain than that employed in the description of this offence. Time and place, fact and purpose, every ingre- dient of the charge, every circumstance constituting the offence, are laid with the utmost precision. To keep an office for the purpose stated is a mere simple fact, and this fact constitutes the *malum prohibitum*. No objection to the description occur- red to the astute and learned counsel who supported the de- murrer. There it was sufficient to pursue the words of the Statute. Does it follow from this that it is always so, or that it is so in the cases at bar? Our Act is so vague, that even the counsel for the defendants cannot agree in its interpreta- tion. Two lawyers can hardly be found to construe it alike. And yet it is insisted on the part of the prosecution, that it is sufficient to charge the offence in the vague and indefinite terms of the Act. The prosecutor however is bound to identify his accusation. Precision in describing the offence, however diffi- cult to him, is the right of the defendants, and of the last im-

portance to them; for it fixes the limits of the accusation as well as its proofs. "In an indictment, nothing material can be taken by intendment or implication." (Hawkin's b. 2, c. 25, s. 60; Id. 3, 111; The Commonwealth v. Stout, 7 B. Monroe, 247; Hartman v. The Commonwealth, 5 Barr, 60.)

In the case last cited Chief Justice Gibson remarks, that the Courts already regret the laxity of description which has been tolerated in a certain class of indictments, showing the danger of countenancing any departure from the great principle which Judge Spencer declares both upon authority and reason, to be universal.

*W. Alexander*, for Mills and others. The petition being insufficient according to the repeated adjudications of this Court, the exceptions of the appellees were properly sustained. (Bush v. The Republic, 1 Tex. R. 455; Burch v. The Republic, Id. 608; The State v. Williams *et al.*, 8 Tex. R. 255.)

What is the legal construction to be given to the Act of March 20th, 1848? What was the old law on the subject? the mischief against which it did not provide? the remedy? and the reason of the remedy provided by this Act? (Dwarris on Statutes, p. 694; Lieber's Hermeneutics, p. 167.)

The Common Law being silent, the old law *in pari materia* is to be found in the Constitution of the State of Texas, (Art. VII., Sec. 32,) and in Hartley's Digest, (Art. 82–3–4–5–6, 379, 438.)

We contend that the mischief against which it was intended to provide is, the issue of paper to circulate as money, and banking or discounting therewith by corporations or pretended corporations claiming to be privileged so to do, or in other words, to have authority of law *so* to do, in this State; the remedy, penalties to be recovered, firstly, from the property of the corporations, &c., and if none found, secondly, from the property of the officers of such institutions; and that the reason of the remedy is that the Act of April 7th, 1846, (Hart. Dig. Art. 85–6,) only embraced individuals, and not corporations and the like.

What is meant by the leading terms in the title and body of the Act to be construed? Does the connected use of such words and phrases as "illegal banking," "corporation," "company," "association of individuals," "banking or discounting," "privileges," "authority of law," and "officers," indicate whether they are employed in a popular and general, or a technical and restricted sense, in this penal Act? (Dwarris on Statutes, p. 696.)

A Bank (whether a corporation aggregate or sole) is either,

1st. A Bank of deposit.

2nd. A Bank of discount.

3rd. A Bank of circulation, (accurately speaking of issue and circulation,) or,

A Bank combining some or all of these kinds. (Bouvier's Law Dic. tit. "BANK;" Angell & Ames on Corporations, p. 46, n. 1.)

That the terms "company" and "association of individuals" which follow the technical word "corporation" are to be taken in the restricted sense of a *quasi, pseudo,* or pretended corporation, is obvious from the terms "privileges," "authority of law," and "officers" (twice used) in connection with them.

The word privilege (Fr. from Lat. *privilegium, privus,* separate, private, and *lex,* law,) of which "privileges" is the plural, has a settled technical meaning. It imports something peculiar and not of common right, and is in this connection synonymous with franchise. Its primary and secondary meanings are substantially the same. See Webster's (4to) Dictionary, to which, as the standard dictionary of our language, the Court is authorized to refer. (Ram on Legal Judgment, p. 95.)

In a tertiary popular sense "privileges" signify "advantages, favors, benefits;" but in no case "operations."

"Privileges" as applied to "no man or set of men" in Section 2 of the Bill of Rights, "to no corporate body," &c., in Section 30 of Article VII. of the Constitution, and to "any corporation," &c., as in this Act, signify franchises. The word, from the connection in which it is used, is evidently not em_

ployed in its tertiary and most enlarged popular sense, as it is when applied to "no citizen," &c., in Section 16 of the Bill of Rights, or as is the word privilege when applied to "every citizen," &c., in Section 5 of the same Article of the Constitution. (Art. 1.)

The words "authority of law" clearly point to corporations and the like, and not to mere partnerships, for corporations are creatures of the law, and require authority of the law, both to enable them to exist and to authorize them to do any act of any description whatever. (Angell & Ames on Corporations, p. 3, and the cases there cited.)

So does the word "officers," which is twice used, for a mere partnership has no officers.

In view of the premises, we contend, that receiving money on deposit is not a privilege, requires no authority of law nor the aid of officers, and is not against law.

The same is the case with "discounting;" i. e. lending at lawful rates and taking the interest in advance. (Hart. Dig. p. 496-7.) Every citizen of Texas has a right to do the acts ordinarily done by a bank of deposit, or a bank of discount ; and every commission merchant or factor (though formerly required to take out a State license) now does such acts, to a greater or less extent, in the usual course of his business.

We hold, also, that the passing or circulation of the paper of solvent specie-paying banks issued in other States is not a privilege, requires no authority of law, and is not included in or meant by the terms "banking or discounting" employed in the Act. Any one has a right to pass such paper, for our Criminal Laws have protected and continue to protect us from being imposed on by means of the paper of non-existent or broken banks, or by counterfeit bank-notes. (Hart. Dig. Art. 379, 438, 532-3-4 ; 1 Robinson's Practice, Ch. 13,) *Expressio unius est exclusio alterius ;* (Broom's Legal Maxims, 515, *et seq.*)

By the Statutes, the circulation of good bank paper issued in other States, is treated, not as a privilege appertaining to any corporation, company, individual, or association of individuals,

but as a matter of common right. It never has been, and is not now the policy of our Legislature to exclude from the limits of the State of Texas, either money or any of its equivalents.

If the Attorney General aims by this suit to make the appellees liable for passing good bank paper issued in the State of Mississippi, and payable on its face in the State of Louisiana, he has carefully avoided apprising them of his design by his petition; and at all events, is seeking to make penal that which the law protects them in doing.

From our analysis of banking and construction of the Statutes *in pari materia*, it follows that the banking or discounting privileges made penal by the Act can only be banking by issue, and discounting with such issue, and claiming so to do as privileged by authority of law, or, in other words, as a corporation or a *quasi*, *pseudo*, or pretended corporation, and as having a franchise to that end, and exercising its functions through its officers. This construction is corroborated by a consideration of what was before the Convention that formed our Constitution. (Debates of the Convention, p. 463, 483.)

The petition of the Attorney General is clearly insufficient. It charges no facts against the firm of R. & D. G. Mills that bring them within the purview of the Act. It does not allege that they have or claim to have any franchise or officers, nor that they have issued in this State any paper to circulate as money, or have discounted with the same.

*J. W. Harris*, also, for Mills and others. As the Attorney General has admitted in argument that his petition must specify the facts that constitute the offence, with the same certainty that would be required by the rules of criminal pleading, had the offence been indictable, we will proceed to an analysis of the authorities upon which he relied in the discussion of the remaining portion of this branch of the case.

The authority which has been mainly relied on is the case of The Commonwealth v. Pray, (13 Pick. 362.)

It will be seen on the next preceding page of that case, viz:

361, the Statute makes it an indictable offence if any person without being duly licensed, "presume to be a common seller " of wine, beer, ale, cider, brandy, rum, or any strong liquors " by retail," &c. In the indictment these acts are set forth as in the Statute, but they are all charged conjunctively. (Id. 359.) Here the keeping of the house is specially charged in the indictment as set forth in the Statute. The Court says, " the " several acts may be punished separately, but the keeping of " the house is a distinct offence, and as such liable to punish- "ment." (Id. 362.) It will be seen from the same opinion, page 363, that in all cases where the charge is general the Court will " take care that the defendant be not surprised, but " that he shall be seasonably furnished with such specifications " and particular statements as may be necessary to enable him " to prepare for his trial, and to meet all the proof that may be " brought against him." Here the Attorney General offered to furnish no specifications at all. In that case facts were distinctly charged ; here, we submit, they were not so charged.

The case of The People v. Bartow, (6 Cowen, 293,) was by the Attorney General relied on in the argument. That was an indictment under a Statute which made it unlawful for any person, &c., " to keep an office of deposit for the purpose of " discounting promissory notes, or for carrying on any kind of " banking business or operations," &c. The indictment charges that the defendant, not regarding the Act, &c., on the first day of April, 1845, at, &c., " did keep an office of deposit for the purpose of discounting promissory notes," &c. And the second count charges that on the same day, &c., the defendant " did keep an office of deposit, for the purpose of carrying on banking business and operations," &c. Here the Court say that " to keep an office of deposit for the purpose of discounting notes is a specific violation of the law." (See page 233.) There the act for which he was indicted was, as a fact, distinctly alleged in the indictment, and the offence was charged in the most specific terms. The indictment was in that case so special that the defendant could not have mistaken the charge which he

was called on to answer; in the case we are considering the petition is so vague, so indefinite, and so general, as to place it beyond possibility that the defendants should know what were the charges upon which the State designed to rely.

The Attorney General also in his argument relied on the case of Rex v. Higginton. (2 Burrows, 1232.) That was an indictment at Common Law, for keeping a disorderly house. By reference to the case, we submit, that the charge of keeping a disorderly house, as to time, place and circumstances, was set forth with minute accuracy. Even the unlawful games that were there played were specified in the indictment. If that indictment, which was so specific, was so much scrutinized, it is easy to see what would have been the fate of this petition, had it been subjected to the same tribunal.

The Attorney General relied on the form of an indictment against one who, it is charged, did unlawfully "set up, occupy, use and exercise 'the art, mystery and manual occupation of a brewer," &c. (2 Chitty's Criminal Law, 540, 541.) By reference to this form and the note on the same page, it will be seen that the words of the Statute are general, and the charge in the indictment is specific. Here when he merely "set up" as a brewer, the offence was complete; and this was specially charged. For it will be seen that the offences in the Statute are in the alternative, and a violation of any one subjected the offender to the penalties of the law. Under the English Statute if a person merely "set up" in the occupation, &c., without doing more, the offence is complete. Under our Statute the penalty is only incurred by the actual use or exercise of banking or discounting privileges, &c.

In the cases relied on by the State, if a person "presumed to be a common seller," &c., or if a person "kept an office for the purpose of discounting," &c., or if one "kept a disorderly house," &c., or if one "set up in any mystery," &c., without doing any other unlawful act, still the offence became complete; whereas under our Statute one must actually "use or exercise banking or discounting privileges," &c., before he can

be subjected to the penalties of the Statute.   In the cases cited the act complained of was so charged and specified that it was impossible for the defendants to mistake the offence which they were called on to answer ; here it is so general that it would be impossible for them to know before hand what really was the charge they were called on to explain or to repel.   When the charge is that we have used and exercised " banking priv-. ileges," we are left merely to conjecture as to whether these are, 1st. of deposit; 2d. of discount; or 3d. of circulation ; for these are the three kinds of banks which are known to our law. (See the definition of " bank " in Bouvier's Law Dictionary.) And it may be here remarked that where the Statute makes use of a word, (as " bank " in this instance,) which has a certain sense at Common Law, the word shall be expounded and received in the same sense in which it is understood at the Common Law.   (See Dwarris on the construction of Statutes, 697.)   If terms of art are used they are to be taken in their technical sense.   (Id. 702.)

The Attorney General has in the argument also relied on Mason's case, (2 Leach's Crown Law, 554, 555.)   To this case we particularly invite the attention of the Court, for, we submit, that it militates strongly against his position.   It will be there seen that in England a person was indicted under one Statute for obtaining a note by " false tokens," and another person was indicted under another Statute for obtaining money under " false pretences," and both indictments were held to be insufficient, because they did not particularly specify what these " false tokens " and " false pretences " were.

We submit, the authorities show that when an indictment is made under a Statute, it will not be sufficient merely to follow the words of the Statute, unless the offence can be thereby specified with the same accuracy which is required by the established Common Law rules of pleading in criminal cases. In other words, that if the indictment contain the words of the Statute, it will be insufficient, unless the indictment " contain " such a description of the crime, &c., that without intending

" anything but what appears, the defendant may know what he " is to answer, and what is intended to be proved," &c.    (1 Chitty's Pleading, 237.)

Again, we contend that in a proceeding for an offence which is *malum prohibitum*, as in this instance, greater particularity of specification is required than for an offence *malum in se ;* the one being a statutory offence and the other an offence at Common Law.    (2 Hawkins' Pleas of the Crown, Ch. 25, Sec. 57 ; 1 Bacon's Ab., 262, note ; 2 Rolle's Ab., 355.)    This, we submit, is a reasonable distinction, for one naturally requires less warning in regard to an offence which is unlawful or evil in its own nature.

LIPSCOMB, J.    The petition filed by the Attorney General in this case charges, " That on the first day of April and from " thence continually, afterwards, for the space of one month,. " the said defendants, and persons unknown, in the char- " acter of President, Directors and Cashier, as aforesaid, did, " then and there, without authority of law, at the said office " of the said illegal bank, use and exercise banking and dis- " counting privileges, in this State, for their own lucre and gain ; " contrary to the Statute, whereby the defendants were guilty " of a misdemeanor, and forfeited a fine of five thousand dol- " lars."    The defendants demurred to the petition, and their demurrer was sustained by the Court.    The State declined, by the Attorney General, the privilege of amending, and judgment was rendered for the defendants, from which this appeal was taken.

The proceedings were instituted under the Act of the State Legislature of the 20th March, 1848, entitled "An Act to sup- press illegal banking ;" and for the purpose of more convenient reference, the 1st and 4th Sections of the Act will be here in- serted.    They will be found in Hartley's Digest, in Arts. 87 and 90, as follows : Sec. 1. " Be it enacted by the Legislature of " the State of Texas, that any corporation, company or associ--

" ation of individuals, who shall use or exercise banking or dis-
" counting privileges in this State, or who shall issue any bill,
" check, promissory note or other paper in this State, to circu-
" late as money, without authority of law, shall be deemed guilty
" of a misdemeanor, and shall be liable to a fine of not less than
" two thousand dollars, nor more than five thousand dollars,
" which may be recovered by a suit in the District Court in the
" name of the State."

"Sec. 4. That each and every month that any corporation,
" company or association of individuals shall use or exercise
" banking or discounting privileges in this State, without au-
" thority, shall be deemed a separate offence, as defined in the
" first Section of this Act ; and each and every bill, check, pro-
" missory note or other paper, issued by any corporation, com-
" pany or association of individuals, in this State, to be circu-
" lated as money, without authority of law, shall also be deemed
" a separate offence as defined in the said first Section."

The objection taken to the petition in this case, is, that it
does not specify the particular act or acts constituting the of-
fence ; that the charge is general. It is admitted that the same
strictness is required in the charge in this case, that would be
necessary in an indictment, and it is further conceded that the
general rule is, that a general charge is not sufficient ; that it
should also set out the particular specification. But, to this
rule there are several exceptions recognized by the law. The
Attorney General claims this charge to be an exception to the
general rule. His proposition is, that as the offence charged
is made as a continued one for one month, that the time and
the offence are all that can be regarded as material ; if the of-
fence has continued for the time, it is altogether immaterial, by
which of the constituents of the offence it was done.

The question now presented was decided by this Court in a
case between the same parties, (8 Tex. R. 256,) and it was deci-
ded that the charge was bad, for want of a specification. I
prepared the opinion under circumstances very unfavorable to
a thorough investigation of the question. I therefore very

cheerfully expressed to the Attorney General my willingness that it should be raised again in this case ; and I believe this conversation with the Attorney General was before the petition in this case was drafted.   I intend, therefore, to examine the case without regarding the decision in that case as conclusive, and shall proceed to a review of the cases upon which the Attorney General so confidently relies.

The case of The People v. Bartow was a proceeding under the Act of the Legislature of New York, of 1818, against unlisenced banking.   It enacted that it should not be lawful for any person, association of persons, or body corporate, from and after the first day of August, then next ensuing, to keep any office of deposit for the purpose of discounting promissory notes, or for carrying on any kind of banking business or operations, which incorporated banks are authorised by law to carry on, unless thereunto specially authorised by law ; and providing a forfeiture of one thousand dollars, for the violation of the law. The charging part in the declaration of a breach of the law was, that the defendant, not regarding the Act nor the provisions therein contained, afterwards, &c., to wit : on the 1st day of April, 1825, at, &c., did keep an office of deposit for the purpose of discounting promissory notes, he not being thereto specially authorized by law ; whereby, &c.   (6 Cowen, 290.) The objection taken to the charge was, that it did not allege that the defendant had contravened all the provisions of the Act, and that it did not specify what kind of banking business or operations it was the purpose to carry on.   It was held to be a sufficient averment, and the Court said, that to keep an office of deposit for the purpose of discounting notes is a specific offence.   It next forbid the carrying on of any kind of banking business.   The latter may include but is certainly more extensive than the former.   To allow the construction contended for by the defendant, would be to render the Statute a dead letter.   The discounting of notes is undoubtedly the principal business of a banking institution.   If in addition to this, it must be shown that the defendant has conducted other

and further operations incident to banking, before he is liable to the penalty, the Act becomes nugatory and inoperative.   On this ground it is only necessary for a party to confine himself strictly to the keeping of an office for discounting notes, the great evil intended to be remedied, and he is sure then not to be reached.   He is excused, because he has not also conducted some of the minor operations of a bank, distinct from discounting notes.   The Statute speaks a different language.   It must, I think, be understood to attach whenever either of the prohibitions have been violated.   This is the manifest construction, although the words, " or either of them," is omitted.   I have given a pretty full statement of this case, because it has been supposed to sustain the petition in the case at bar.   I will pass it for the present, but will notice it again, in discussing how far it is analogous to the question now before the Court.

The case of the Commonwealth v. Pray, (13 Mass. 359,) has been much relied on by the Attorney General.   It was an indictment under the following Statute : " That no person may " presume to be a common victualler, inn-holder, taverner, or " seller of wine, beer, ale, cider, brandy, rum, or any strong " liquors, by retail, under a penalty of twenty pounds."   And the second clause provides that " if any person shall, without " licence, sell any spirituous liquors or any mixed liquors, part " of which is spirituous, he shall incur a penalty of not less than " forty shillings nor more than six pounds."   I cite the Statute from the Judge's opinion.   The indictment is as follows : " The " jurors, &c., present that Edward Pray, of Braintree, in the " county of Norfolk, trader, on the thirtieth day of September, " in the year of our Lord one thousand eigth hundred and thirty, " and on divers other days between that day and the twentieth " day of December next following, at Braintree aforesaid, did " presume to be and was a common seller of wine, beer, ale, " cider, brandy, rum and other stong liquors, by retail, in less " quantities than twenty-eight gallons, and that delivered all at " one time."   This indictment was held good, on objection being raised that it was defective in not specifying the particulars

constituting the offence. The Judge says, " The first offence
" consists in presuming to be a common retailer or common
" seller, &c., the second in actually selling. Although the first
" offence may not be completed without committing the second,
" yet the second may be without committing the first." The
Court, after laying down this as an exception to the general rule
as to specifications, because it was the offence created by Statute,
of being a common inn-holder, a common seller, &c., and the of-
fence was sufficiently charged to prevent another conviction for
the same offence, adds, " Besides, the Court, according to mod-
" ern practice, in all cases of general allegations, take care that
" the defendant shall not be surprised, but that he shall season-
" ably be furnished with such specificatious and particular
" statements, as may be necessary to enable him to prepare for
" his trial, and meet all the proof that may be brought against
" him."

The Attorney General refers us to a form of an indictment
in Chitty, under the Statute 5th Eliza. Ch. 4, which enacts that
it shall not be lawful for any person, other than such as then did
lawfully use or exercise any art, mystery or manual occupation,
to set up, occupy, use or exercise any craft, mystery or occupa-
tion, then used or occupied within the realm of England, ex-
cept he should have been brought up therein seven years, &c.,
under a penalty, &c., for every month, &c. The indictment
is as follows : " did set up, occupy, use and exercise, and from
" thence continually afterwards, for a long space of time, to
" wit : the space of six whole months, and upwards, to wit :
" until &c., at &c., aforesaid, for his own lucre and gain, did un-
" lawfully set up, occupy and exercise the art, mystery and
" manual occupation of a brewer, the same being an art,
" mystery and manual occupation used within England on the
" twelfth day of January, in the fifth year of the reign of Eliz-
" abeth." The Statute is general, prohibiting the occupation
or use of all trades, arts and mysteries, known at the passage
of the Act as such, unless the party charged had served a seven
years' apprenticeship. Very good policy, perhaps, at the time,

and calculated to make better citizens; but Young America would regard it as putting on the straight jacket. The indictment charges the defendant with the exercise of the art of a brewer, the same being an art, mystery and manual occupation. The indictment would certainly have been more specific in the charging part, had it stated what kind of malt liquors were made and brewed, or at least what kind the prosecutor would rely on proving in support of his indictment; for it never can be supposed that the prosecution could be sustained, without proof that malt liquors of some sort were brewed for the space of time named in the Statute. We shall perhaps have occasion to return to this precedent of Mr. Chitty in examining the reason of admitting any exception to the rule that the indictment should specifically set forth the facts constituting the offence charged.

In treating of this subject Mr. Chitty says, "For this purpose "the charge must contain a certain description of the crime "of which the defendant is accused, and a statement of the facts "by which it is constituted, so as to identify the accusation, "lest the Grand Jury should find a bill for one offence, and "the defendant be put upon his trial in chief for another with- "out any authority. These precautions are also necessary in "order that the defendant may know what crime he is called "upon to answer. * * * * * They are also important in order "that the defendant's conviction or acquittal may insure his "subsequent protection, should he again be questioned upon "the same ground, and that he may be able to plead his previ- "ous conviction or acquittal of the same offence in bar of any "subsequent proceedings." (1 Chitty, chap. 5, p. 169.) The humanity and good sense of these rules strongly recommend them to the favorable consideration of every jurist, in the administration of criminal jurisprudence. And although they may sometimes have been censured by Judges as merely technical, and too much calculated to favor the escape of the guilty, yet they have continued to receive the sanction of the most enlightened Jurists in our own country, and the recent tendency

has been to enforce this rule more stringently, rather than to tolerate a relaxation. And it pervades Courts of civil as well as criminal jurisdiction, that each party to a suit should be clearly advised of the cause of action, and the particular grounds of defence.

The late lamented Chief Justice Gibson, in a case of conspiracy, says that " the English Courts are beginning to regret " the laxity of description that has been tolerated in these in- " dictments for conspiracy ; and policy requires that the Judges " here as well as there should begin to retrace their steps. " * * * * The counts before us are so uncertain and bald " in circumstances as to have shed scarce a ray of light on the " charge which the defendants were required to meet." (5 Barr, Penn. R. 65.) And the same learned Judge further adds, upon the subject of the specifications in a charge : " It " may be said that the form of a criminal purpose meditated, " but not put in act, can seldom be described ; but it can be as " readily laid as proved. Precision in the description of the " offence is of the last importance to the innocent, for it is that " which marks the limits of the accusation and fixes the proof " of it." (Ib.) This opinion is the more valuable, because it shows the true ground why it is required, and leaves it not to the caprice of the Judge in making exceptions. It is put upon the well established doctrine that the allegata and probata must agree. And again, the same Court, in the case of Duck v. The Chief Burgess, (7 Watts, 182,) *per curia:* " The plain- " tiff declared generally, in the words of the law, that the de- " fendant had annoyed the public with a collection of ' stale, " putrid, or stinking fat, grease or other matter,' without more " circumstance. But it is not sufficient in an indictment or " popular action, which this resembles, to lay the offence in the " very words of the Statute, unless they expressly serve to al- " lege the very fact with all necessary additions, without a " grain of uncertainty or ambiguity. * * * * The special " circumstances necessary to individuate the offence, must be " stated distributively, and not disjunctively ; for to say the

" defendant did the act or caused it to be done, is to say he
" committed one of two offences, without charging him partic-
" ularly with either." (Hawk. b. 2, Ch. 25, Sec. 58.)

Mr. Chitty says, in enforcing the necessity of setting out the
facts constituting the offence : " And where the circumstances,
" are constituent parts of the offence they must be set out, but
" where the crime exists without them, they may be alleged in
" aggravation, but are not absolutely required." (Ch. 5, p.
227.) The necessity of these specifications or statements of
fact is strongly shown by Senator Spencer in 9 Cowen, 592 and
593. The Senator, in commenting upon the dangerous conse-
quences of permitting a man to be tried upon a loose, general
charge of an offence, says : " Such indictments as that now un-
" der consideration are, in my judgment, repugnant to the great
" features of the Criminal Law. They open the way to general
" and indefinite charges. They surprise the defendant. They
" afford no means of determining whether they were legally
" found. They deprive the accused of the right of reviewing
" them. And they leave him at the mercy of a public prosecu-
" tor." (See also Tennessee v. Field, 1 Martin & Yerger, 137.)

It is admitted, however, that where general pleading is al-
lowed, it is an exception. How is this doctrine of allowing an
exception to be regulated ? It surely is not to be left to the
opinion of the prosecutor, as a mere matter of convenience, the
rule at all times to yield to his convenience. Mr. Starkie, in
his Criminal Law, lays down the doctrine thus : " The only
" instances in which general pleading seems to be allowable,
" are exceptions, from the necessity of the case, where the of-
" fence is made up of a number of minute acts, which cannot be
" enumerated upon the record without great prolixity and the
" danger of variance." (1 Starkie, Crim. Law, p. 75, 76.)
And the illustration he gives is, an indictment against a com-
mon scold, where it is only necessary to avar that she is a com-
mon scold, and in an indictment for barratry it may be averred
generally that the defendant is a common barrator. A note
refers to Hawk. 2, Ch. 25, Sec. 59, for this. " But it is usual

"for the prosecutor (before the trial) to give the defendant a "written note of the particulars intended to be relied upon." And it seems that in New York, even, when an exception is made to the general rule, in the excepted case of common barrators, the prosecutor is required before trial to furnish the defendant a bill of particulars of the instances of barratry intended to be relied on upon the trial. Where this is done, it can hardly be said to be any exception to the general rule. It is only changing the statement or specification of the facts, from the indictment, information or petition, to the bill of particulars. (9 Cowen, cited before.) And in all cases, except indictments, the rights and privileges of the accused would be as well secured, as if the facts to be relied on were stated in the charge of the offence.

The bill of particulars, as a substitute for the specification in an indictment, ought not to be tolerated in any country where the rights of the accused are at all regarded; because, this bill of particulars being furnished after the bill found, what assurance has the accused that he may not be called upon, on the trial in chief, to answer a different ground of offence from the one the Grand Jury had passed upon, and on which their bill was found?

But, suppose the cases relied on by the Attorney General, and before cited, as forming exceptions to the general rule, are to be tested by Mr. Starkie's rule, that exceptions can only be allowed from necessity arising from the difficulty of putting the circumstances on the record. The case of Bartow, cited before from 6 Cowen, was a case where there was no necessity of making the exception. It would have been easy for the pleader to have stated the circumstances on which he relied for making out the offence, in its description in the indictment. He would have been under no obligation to state all of the circumstances, or all the constituents of the charge of banking, but only so much or so many of them as he would rely on upon the trial. It would have been as easy to have done this in the indictment as it was to make them out in the bill of particulars. In that

case, however, the exception taken was, that the charge did not state that the defendant had used and exercised all the privileges of banking. This surely was not necessary, but only such as the prosecutor relied on. In the case of Pray v. The Commonwealth, (13 Pick.) before noticed, there would have been no more difficulty in averring the particular facts constituting the offence charged, than in making out a bill of particulars, which the Court said in its opinion would always be required to be given, when the charge was a general one. The precedent of an indictment under the 5 Elizabeth, for practicing, using and occupying the art of a brewer, without having served thereto a legal apprenticeship, certainly was not a case where the prosecutor, from any necessity, would be justified in making the charge general. He could have specified in his indictment in what particular the defendant exercised the occupation of brewer, on which he relied to support the charge; and if various malt liquors were made by him, the specification and proof that he made those specified, for six whole months, would have been sufficient; and no reason is perceived why it should not have been required, instead of the bill of particulars, furnished after the bill was found by the Grand Jury, incurring a risk of a conviction for a different offence from the one on which the bill had been found. And if this precedent is to be tried by Mr. Starkie's rule, or even by Mr. Chitty himself, it cannot stand.

Does the case at bar present such difficulties in putting the ingredients constituting the offence, on the record, as to justify the prosecutor in making a general charge in his petition? The charge is, that the said defendants, "at the office of the said illegal bank, use and exercise banking and discounting privileges." Now it cannot be questioned, but the prosecutor will have to prove this charge, by the fact of the exercise of banking and discounting privileges. He would not have to prove the whole range of banking and discounting privileges, but some one of them at least must be proven. Then why not allege in his petition such fact, on which he relied to prove the offence charged,

and advise the accused what act or fact he would be required to defend himself against. But it may be said, that according to some of the authorities cited as exceptions to the general rule, it is said that these facts must be proven, but need not be averred. Shall we follow such authorities, so unreasonable, so well calculated to surprise the accused, and to subject him to being twice tried and punished for the same offence, (because if the proof is not confined to the allegation it will be difficult to prove a former acquital or conviction for the same offence,) or shall we not rather with Chief Justice Gibson regard "the "description of the offence as of the last importance to the in- "nocent, for it is that which marks the limits of the accusation "and fixes the proof of it"? I believe that the rule of furnishing a bill of particulars, instead of stating those particulars in the charge, was introduced with the first departure from the rule laid down in all the books to be the general one. We have seen that in the cases referred to as exceptions, the prosecutor was required to furnish a bill of particulars of the grounds upon which he relied for a conviction. As we have no such practice in our Courts, nor do we feel authorized to make such a rule, it would seem to me that we should rigidly enforce the rule requiring a particular specification of the offence. It is true that some offences at Common Law can acquire no more definite meaning from specification than common understanding has given to the offence, by which it is in law designated. Such is a baudy house, and so would be the playing at farro, the indictment need not describe the game ; but whenever it can be made better understood, and serve to notify the defendant what he had to defend against, and likewise afford an opportunity of defending himself against a second suit for the same cause, it should be specified in the indictment, petition, declaration or by whatever way the offence is sought to be established against the defendant.

On the ground, then, that the charge is general, where it might have been made specific, by averring in what particular the defendants used banking and discounting privileges, I be-

lieve that the petition was defective, and substantially so; and that the judgment should be affirmed.

But if it was admitted that the charge, general as it is, would have been good in analogy to the cases relied on by the Attorney General, if our Statute had stopped with the particular offence charged, yet I feel very confident that in reference to the fourth Section of the Statute, a general charge would not have been sufficient. The truth of this proposition, I believe, cannot be successfully assailed, that where a Statute creates an offence, composed of different ingredients, and the same Statute makes each of those constituents a distinct offence, it is necessary, in defining and making out the offence in the charge, that the particular constituent or constituents relied on should be specified with accuracy, not only to enable the defendant to know what he is charged with, but to enable him to plead it in another suit, if one should be brought for the same offence, either as former conviction or former acquittal, as the case may be. The term common barrator embraces several constituents. Suppose an Act of the Legislature should make some one or more of these constituents a distinct offence. Could it be doubted that after the passage of such Act, it would be required, in an indictment for common barratry, to specify in what particular act of barratry the offence charged consisted. So, if the making any particular kind of malt liquor had been made a distinct offence, under the Statute under which the precedent of an indictment against a brewer was found by Mr. Chitty. So long as the components of a brewer were none of them made a distinct offence, the precedent supported by the bill of particulars, might be regarded, under the authority cited, as sufficient; but as soon as one of them became a distinct offence, the necessity would follow of specifying the particular grounds constituting the offence, on which a conviction was sought, as any one of several kinds of malt liquor would constitute the maker a brewer. And so, as the fourth Section of our Statute makes so many distinct acts of banking and discounting distinct and separate offences, it is essential to the secu-

rity of the accused, both as regards a fair trial, by notice of what he has to answer, and also to prevent another recovery for the very same act constituting the offence charged, that the grounds constituting the offence should be specified.

The keeping an office, without exercising any banking or discounting privilege, would not constitute the offence. And in order to convict, it will be necessary to prove the fact of the exercising of some one of the multifarious acts of banking. It was admitted in the case from 6 Cowen, that this would have to be proven. Suppose, the charge being general, the prosecutor should offer in evidence in support of this charge the issuance of a note, or the discounting a bill, and on this testimony procure a conviction. He would then offer the issuance of the same note, or the same bill discounted, as evidence to support a charge in another prosecution for the distinct offence of issuing a note or discounting a bill, and should he be convicted, it would be clearly a conviction twice for the same act. There is no way of escaping the result, unless the position be assumed, that on the first conviction it was not for issuing the note, or discounting the bill, but for keeping an office. This is absurd, because the mere keeping a suitable office for one month would not constitute the offence, but the use of banking and discounting privileges would have to be charged and proven to complete the offence.

The Attorney General has urged the difficulty of being more specific. No difficulty not amounting to absolute inability, could be a sufficient excuse. I see no such difficulty as is suggested, and certainly it does not amount to inability to state the facts constituting the offence ; and in the language of the late Chief Justice Gibson, "it is not more difficult to specify the facts than it will be to prove them."

I am clearly of the opinion that the judgment ought to be affirmed, and it is the opinion of a majority of the Court that it be affirmed. This opinion will apply to and govern the other case between the same parties, and also the case of The

State v. R. & D. G. Mills, and the same judgment will be entered in each of them.

Judgment affirmed.

WHEELER, J.   There is, and can be no difference of opinion as to the general principles of the law applicable to this case. The only difference is, in the application of those principles to the case before the Court.   Circumstanced as I am, in reference to a previous decision of this Court, (The State v. Williams, 8 Tex. R. 265,) in which I concurred at the time, it is matter of regret, that I cannot now concur in the application which is made of the law to the present case.

The Statute is, in one respect, very peculiarly framed.   Ordinarily, we would not think it necessary to look to the first and last Sections of an Act, consisting of several Sections, for the constituents and definition of an offence created by it.   Yet such is the case in reference to the offence created by this Statute.   It was the circumstance of looking to the description of the offence, as created by the first, and not attending sufficiently to its constituents, as defined in the last Section of the Act, which led me into what, I am now convinced, was an error, when the former case was decided.   That Section makes the use, or exercise of banking or discounting privileges, by any corporation, company or association of individuals, for the period of one month, and the act of issuing a bill, check or promissory note, or other paper to circulate as money, by any corporation, company, or association of individuals, separate and distinct offences.   In the one case it is the practice, in the other it is the single act, which is made, by the law, to constitute the offence.   The present suit is for the former.   The petition contains the statutory description of the offence ; and it avers every circumstance, which is made to constitute the definition of the offence by the Act, so as to bring the defendants precisely within it.   How an offence, which is made to consist in the " use," or " exercise" of banking and discounting privileges,

for the period of one month, could be otherwise more specifically charged, or identified with a greater certainty of description, with any reasonable expectation of obtaining proofs to correspond with the description, so as ever to ensure a conviction, I am unable to perceive. There is, doubtless, great propriety in the rule, (and I would always insist upon inflexible adherence to it,) that every offence must be described, in charging it, with the greatest speciality, particularity and certainty, which the nature of the case will reasonably admit of; and when it is created by Statute, all the circumstances which are made to constitute the definition of the offence in the Act, must be distinctly averred, so as to bring the defendant precisely within it. And this is what, it seems to me, has been done in this instance. How else the petition could describe the practice, custom, or habit, the continued "use" of "privileges," for the period of a month, which is made to constitute the offence by the Statute, so as that the averments would be susceptible of proof, I cannot perceive. If the description of the offence which has been employed be not sufficient, then, with all the lights I have been enabled to derive from the argument of counsel for the appellees, I must admit I could not undertake to furnish a precedent for the description of this offence, which I would recommend, and could affirm would be sufficient. And unless I could do this, I must hesitate to pronounce this petition insufficient. Before I condemn the precedent which has been furnished on behalf of the State, I desire to see how a better may be framed; and to be able to point the Attorney General to the sources, the "fountains rather than the rivulets," of the law, where may be found, in its precedents and adjudications, the safe and sure principles which shall guide him in his future endeavors to obey the legislative mandate. This I must do, holding myself equally bound to obey and administer the law, "as it is written;" unless I were prepared to hold, that the Statute itself is nugatory, and cannot be enforced. For if a greater certainty of description is required, than that which has been employed in this instance, it appears to me evident, that

the law cannot be enforced. And to require it, must be, it seems to me, virtually to repeal the Statute. That such will be its practical effect in this instance, is not, I presume, a doubtful question. Practically and virtually, therefore, I consider the real question to be, whether this provision of the law shall be enforced, or rendered nugatory by judicial construction. And the learning, investigation, earnestness and zeal, which counsel for the appellees have brought into the discussion of this ostensibly mere question of pleading, depending for its decision upon principles too obvious and familiar to require, or, I might almost say, to admit of discussion, admonish me, that it is so considered by them.

If the execution of the law is to be defeated, as it seems to me it must be, if this mode of describing and charging the offence is to be held not sufficient, I would prefer so to pronounce directly ; and to place it upon the higher ground, of a want of power in the Legislature, or of certainty in the law ; holding, either that the Leguislature had not the power to enact a law to punish particular acts ; and also, the practice which the commission of a series of those acts contitutes ; thus, it may be said, punishing a man twice for the same offence ; or, that the Legislature have undertaken to make that an offence, which is in itself so vague and indefinable, as to be incapable of being so described and identified, as to apprise the accused of the nature of the accusation preferred against him ; thereby endangering the preservation of a great principle of natural right, affirmed by the Bill of Rights ; which forbids that any one shall be twice punished for the same offence ; and implies that the accused shall be apprised of the nature of the accusation preferred against him, having the right to be heard by himself or counsel, to meet and repel it. But I know of no precedent, or adjudication, which I could invoke, to warrant me in pronouncing against the validity and obligatory force of the law, upon either of these grounds. On the contrary, it appears from the citations in the briefs of counsel, and from the numerous cases and references to be found in the books upon the

criminal law, and which it would be an unprofitable consumption of time here to cite, to have been, from time immemorial, the settled and undoubted law, that in cases analogous to the present, both the practice and the acts which go to constitute the practice, may be separately punished ; and that the one is not dispunishable because the other is punishable.   Such are some of the instances given by the learned Judge who delivered the opinion of the Court in one of the cases cited by the Attorney General, (The Commonwealth v. Pray, 13 Pick. R. 362,) as the keeping of a gaming house, and other instances given, of which the Court say, " The several acts may be indicted and " punished separately ; but the keeping of the house is a dis-" tinct offence, and as such, liable to punishment."   And it will readily be perceived, by attending to the constituents of offences of this character, instanced in the books, that, while in many, perhaps most of them, the general offence, or practice, and the acts which go to constitute it, are, in their nature, distinct, and very different offences ; and in some instances, the acts, taken severally, are not offences, or punishable ; yet in others, the general offence is made up of, and constituted by a series of acts, severally punishable.   And in respect to all the instances, where the offence is the practice which consists of a series of acts, it is in general, from the very necessity of the case, held to be sufficient, in the indictment, to describe the practice ; without attempting to describe specially the acts which constitute it ; and for the reason, that a description of the practice is all the certainty of description, which the nature of the case will reasonably admit of.   A greater degree of certainty than this, is never required in any case.   For that would be to prevent the enforcing of the laws, and render offences dispunishable.   " The law does nothing vainly ; commands nothing vainly ; it intends nothing that is impossible." (12 Co. 89.) Nor does it require, or intend anything that is not reasonable and convenient.   And it therefore, never requires, in an indictment for any offence, whether known to the Common Law or created by Statute, and of whatever nature, a

greater degree of certainty than the nature of the case will rea-
sonably and conveniently admit of. The greatest degree of
certainty practicable, must always be sufficient. And such, I
think, is the certainty attained in this instance. If it be admis-
sible, in an indictment for keeping a gaming house, or a disor-
derly house, or a house of ill fame, to describe the offence in
general terms, because the acts which constitute it " cannot be
enumerated upon the record without great prolixity, and the dan-
ger of variance ;" and a greater degree of certainty, therefore, in
the very nature of the case, cannot reasonably be acquired ; for
how much better a reason should it be held admissible, in de-
scribing the offence of using and exercising banking and dis-
counting privileges for one month ; where the particular acts
which constitute the offence, extending through such a period
of time, cannot be enumerated upon the record without intoler-
able prolixity, and the certainty, not to say the danger of va-
riance between the allegations and the proofs, should such a
thing he attempted ; and where to require it, would be, not
only to require that which is not reasonably and conveniently
practicable, but which is morally impossible, and must, of ne-
cessity, defeat the manifest intention of the law. The case of
The People v. Bartow, (6 Cowen, R. 290, and other similar
cases doubtless may be found,) is, I think, an authority in point ;
and which, as a precedent, and in principle, fully sustains the
present case. And I apprehend a well considered case, upon a
similar Statute, will not be found, where it has ever been held,
that a statement of all the circumstances which are made to
constitute the definition of the offence in the Statute, is not le-
gally sufficient.

I do not think there is any reason to apprehend, that the de-
scription of the offence in this case, will not answer the pur-
pose of apprising the defendants of the precise offence with
which they are charged. The law may be considered harsh,
severe or impolitic in its operation. But the policy of its en-
actment was for the consideration of the Legislature, not for
the Courts, whose province it is to administer, not to make or

unmake laws. With the policy of the law we have nothing to do ; but only with its administration. And I know of no precedent or authority, which, in the view I take of the case, would warrant me in holding the petition insufficient, tested by the rules which have hitherto been applied by the Courts in similar cases.